275 So.2d 795 (1973)
Gene FLEMING, Plaintiff-Appellant,
v.
CONCORDIA PARISH SCHOOL BOARD, Defendant-Appellee.
No. 4053.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1973.
Dissenting Opinion April 9, 1973.
Rehearing Denied April 19, 1973.
William Koerber, Vidalia, for plaintiff-appellant.
W. C. Falkenheiner, Vidalia, for defendant-appellee.
Before FRUGÉ, HOOD and DOMENGEAUX, JJ.
*796 DOMENGEAUX, Judge.
This is a mandamus suit instituted by Miss Gene Fleming against the Concordia Parish School Board. Plaintiff seeks a judgment requiring that defendant reinstate her as a teacher in the Concordia Parish school system, and that it compensate her from the date of her discharge to the date of her reinstatement. Judgment was rendered by the trial court rejecting plaintiff's demands and dismissing her suit. Plaintiff appealed.
The sole issue presented is whether the defendant school board performed the ministerial duties required of it by law, and particularly by LSA-R.S. 17:442 or by LSA-R.S. 17:443, in discharging plaintiff as a teacher.
Miss Fleming was employed by defendant on or about September 1, 1970, to serve as a third grade teacher in Concordia Parish during the 1970-71 school session. She was assigned to the Clayton Elementary School, in that parish, and she taught there from September 1, 1970, until September 2, 1971. The School Board discharged her on the last mentioned date, but paid her salary through September 30, 1971.
Plaintiff received a college degree in 1940, and since that year she has held a regular teachers certificate, issued by the State Department of Education, certifying that she is qualified to teach in elementary grades in the schools of Louisiana. She taught school in Concordia Parish from 1942 until 1944. She resigned in 1944, however, and did not resume teaching until September 1, 1970. Both parties apparently agree, and the trial court held, that while plaintiff was teaching in Concordia Parish in 1970 and 1971, she was a "probationary teacher", as that term is used in LSA-R.S. 17:442.
Edward Jackson was the principal of Clayton Elementary School while plaintiff taught there. On May 17, 1971, Mr. Jackson wrote to Ben L. Green, Jr., Superintendent of Schools in Concordia Parish, recommending that Miss Fleming not be re-employed at Clayton Elementary School, and assigning reasons for his recommendation. His letter reads as follows:
"Mr. Ben L. Green, Jr., Superintendent Concordia Parish School Board
Vidalia, Louisiana May 17, 1971
Dear Mr. Green:
Miss Gene Fleming, a first year teacher having come back to the teaching profession after several years absence, is a third grade teacher at Clayton Elementary School.
Miss Fleming has not found the method of ability grouping of students within groups for instruction to her liking and prefers a class situation where all of the students are about on the same level. Working with more than one group within a class may possibly be a burden to her as many of her students are not interested or challenged to the extent that they have become somewhat of a discipline problem. Much of her time is spent during the day getting them quiet for instruction.
As principal, I made suggestions as to how the discipline problem might possibly be resolved through more challenging classwork but my suggestions were not accepted. In fact, none of the observation forms of observations I made of her class was ever signed by her acknowledging the evaluation or suggestions that I made.
I do not recommend that Miss Fleming be reemployed at her present position at Clayton Elementary School.
 Sincerely,
 /s/ Edward Jackson
 Edward Jackson, Principal"
At a meeting of the School Board held on August 5, 1971, a motion was made, seconded and carried that "the School Board will hold hearings regarding personnel problems on August 27, 1971, at the *797 School Board office, . . . for Sammy Davis, Jr., Joyce Smith and Gene Fleming," and that the staff was to "prepare and forward proper notice as required by law to the above named parties." On August 9, 1971, the Superintendent of Schools for Concordia Parish wrote the following letter to Miss Fleming:
"Miss Gene Fleming
221 North 2nd Street
Ferriday, Louisiana 71334
 August 9, 1971
Dear Miss Fleming:
Written and signed charges of wilful neglect of duty and incompetency have been preferred against you by Edward Jackson, Principal of the Clayton Elementary School where you were employed last year. A copy of these charges is attached to this letter as required by law.
You are further advised that a hearing will be held at two (2:00) o'clock p. m. on the 27th day of August, 1971, at the Concordia Parish School Board Office in Vidalia, Louisiana. This hearing may be public or private, at your option, and you will have the right to appear with witnesses and counsel according to law.
For your further information, I am furnishing you herewith a copy of R.S. 17:442 pursuant to which these proceedings will be conducted.
 Yours truly,
 /s/ Ben L. Green, Jr.
 Ben L. Green, Jr.
 Superintendent"
A copy of the letter which Mr. Jackson had written to the Parish Superintendent of Schools, and a copy of the first paragraph of LSA-R.S. 17:442, were attached to the letter which the Superintendent wrote to Miss Fleming on August 9, 1971.
Plaintiff received the above quoted letter from Superintendent Green shortly after August 9, 1971. Prior to that time she did not know that Mr. Jackson, the principal of her school, had written to the Superintendent recommending that she not be reemployed.
The hearing scheduled to be held in the School Board office on August 27 was postponed until August 30, 1971, at which time plaintiff was present for the hearing. She was asked at the outset whether she had any objections to the procedure, whether she had received "enough notice" and whether she would like to have a lawyer present. Her answer was, "No, sir. Not at this time. I would rather present my case." The School Board then proceeded to hear witnesses, some of whom were cross-examined by plaintiff, and plaintiff also testified in her own behalf.
At the conclusion of that hearing the School Board took the matter under advisement. The Board reconvened on September 2, 1971, and on that date a motion was made, seconded and carried "that Miss Jean Fleming be found incompetent to teach under the current conditions without further training; that her one year temporary employment be terminated immediately, but that she be paid for the month of September, 1971."
It is clear that plaintiff is correct in asserting that defendant did not comply with the provisions of LSA-R.S. 17:442. In pertinent part, that statute provides that:
Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.
*798 The record is devoid of any document that can reasonably be construed as a written recommendation of the superintendent of schools that plaintiff be discharged. We are not persuaded by defendant's argument that the aforequoted letter of Superintendent Green to plaintiff, dated August 9, 1971, constitutes such a recommendation. Not only does the letter contain no language indicating the Superintendent's opinion regarding a discharge, but the testimony of its author clearly negates any intention on his part to recommend plaintiff's dismissal therein. Thus he testified that, "I did not make a written recommendation. No, sir." He emphasized this by stating, "No, sir. I never do make a written recommendation in fact to the board on a teacher being employed or discharged."
There being no written recommendation by the Superintendent for plaintiff's discharge, her dismissal under LSA-R.S. 17:442 would certainly be invalid. State v. Vernon Parish School Board, 222 La. 91, 62 So.2d 111; State v. Bienville Parish School Board, 198 La. 688, 4 So.2d 649; State v. Red River Parish School Board, La.App., 193 So. 225; Andrews v. Claiborne Parish School Board, La.App., 189 So. 355.
We find, however, that plaintiff's dismissal was in full compliance with LSA-R.S. 17:443. In relevant part that statute provides that:
A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty,. . . and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least fifteen days in advance of the date of the hearing, the school board shall furnish the teacher with a copy of the written charges. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at the said hearing. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
Clearly each of the requirements set out in that statute were met. Plaintiff's principal, Mr. Jackson, made written and signed charges of willful neglect of duty and incompetency on plaintiff's part. These were communicated to her on August 9, 1971, by Superintendent Green in a letter in which he also gave her notice that a hearing would be held on August 27, 1971, and advised her of her rights under LSA-R.S. 17:443 as set out above. True, the Superintendent said in his letter that the hearing would be held pursuant to R.S. 17:442, but we find this to be of no consequence.
All of the procedures followed, from the initial preference of charges to the final verdict of the School Board, were in compliance with LSA-R.S. 17:443. It has long been the opinion of our courts that the name given to an action or instrument will be disregarded when it is in fact something other than what it is called. Thus the fact that the Superintendent said he was proceeding under LSA-R.S. 17:442 does not alter the fact that the proceedings were actually being had pursuant to LSA-R.S. 17:443. Indeed a reading of Mr. Green's letter of August 9, 1971, immediately reveals that his language in writing the letter is taken directly from LSA-R.S. 17:443 as above quoted. This alone was sufficient to give plaintiff, an educated member of the teaching profession and a citizen presumed to know the law, notice that the statute being applied was LSA-R.S. 17:443 and not LSA-R.S. 17:442, which does not even mention a hearing, and a copy of which she was furnished.
In 2 Am.Jur.2d Administrative Law, § 364 and 365, is found the following:
§ 364. Waiver.
Since notice goes to jurisdiction of the person rather than of the subject matter, *799 the cases recognize that generally the right to notice in an administrative proceeding may be waived. At least defects in the notice actually given, such as being for less than the full period of required notice, may be waived and are waived by appearing and participating in the proceeding without objection.
§ 365. Appearance.
A failure to comply with the requirements as to notice and process may result in a failure to acquire jurisdiction, but if a general appearance is entered, jurisdiction of the person is conferred even though it was not acquired by proper service of notice or process. This rule covers the case where notice was given but was defective, as where the notice was unduly short or for less than the full period required by statute. A general appearance without objection waives all irregularities preceding the hearing. (Emphasis mine).
The above-stated rule of administrative law was clearly applied in Brahy v. Federal Radio Commission, 61 App.D.C. 204, 59 F.2d 879, wherein notice was sent to plaintiff stating that a hearing was to be held in order to consider renewal of his broadcasting license. The applicant complained that he was inadequately notified and, therefore, misled. The notice he received informed him that he was to be prepared to defend himself as to allegations that he had been using excess power on a particular day; however, it was shown that the hearing was much broader in scope than originally stated in his notification. The court noted that the plaintiff "is entitled to reasonable notice of the specific issues to be determined at the hearing. But in the present case appellant elected to proceed with his defense, thereby waiving the lack of notice."
In Williams, et al. v. East Baton Rouge Parish School Board, La.App., 36 So.2d 832, the court held that where certain school bus operators were given written notice of the hearing of charges of willful neglect of duty and were actually present at the hearing, they waived the statutory requirement that notice be given to them 15 days in advance of any hearing. In effect, the First Circuit held that actual notice, followed by the presence of the parties at the hearing, is sufficient under the applicable statutory provisions. See Reed v. Ville Platte Fire and Police Municipal Board, La.App., 263 So.2d 924, wherein this Court cited the Williams case.
It may be argued that the Revised Statute controlling the dismissal of school bus drivers, has no application to the instant case, however, in Stewart v. East Baton Rouge Parish School Board, La.App., 251 So.2d 487, another case wherein there was a question as to the proper dismissal of school bus drivers, the court stated the following:
The bus operator's tenure law is very similar to the teacher tenure law except that the section involved here, section 493, . . . provides several additional grounds for dismissal.
Therefore, it seems that an analogy with the school bus driver's statute would be valid when deciding (1) whether or not the notice was sufficient or (2) whether it was waived when the plaintiff voluntarily appeared at the hearing and, in response to questions by the board, answered that she waived all rights regarding the sufficiency and specificity of the notice. We opine that it was.
The intent of the Legislature in enacting the two statutes with which we deal herein, was obviously to protect teachers, giving them greater security in their employment. It was decided by that body that teachers having tenure, i. e. those who had taught for three years, should have considerably more protection than those who were merely teaching on a probationary basis until their skill and adaptability to the profession could be measured. Hence the far more burdensome procedures *800 for dismissal contained in LSA-R.S. 17:443, dealing with permanent, or tenured, teachers.
The record reveals that at all times pertinent to this case, the Concordia Parish School Board was in the throes of a most exasperating situation brought on by some rather cumbersome orders from a Federal District Court and the reaction thereto of a number of its employees. Under such circumstances we cannot fault the School Board for attempting to "play it safe" by giving plaintiff the benefits provided for in LSA-R.S. 17:443, even though she was merely a probationary teacher and was not entitled thereto.
By the same token we think that it would be manifestly unfair, to hold that plaintiff has in any way been injured in this case. She was entitled only to the scant protection of LSA-R.S. 17:442 but she was given the far broader protection of LSA-R.S. 17:443. The inequity of punishing this defendant School Board for doing more than was required of it is unquestionable, and we are not prepared to hold that plaintiff may complain of having received more than she was legally entitled to.
Cases from other states have considered whether a slight departure from the prescribed standards of similar statutes prejudiced or harmed the employee in any way. In Fahl v. School District No. 1 in City and County of Denver, 116 Colo. 277, 180 P.2d 532, the Supreme Court of Colorado held that where charges filed by the school superintendent against a teacher were general and vague and not in compliance with the state statute, but later were particularized in a subsequent communication from the superintendent to the teacher and an opportunity to be heard was given at a full hearing, the teacher was not prejudiced by lack of specifications. Finding no prejudice, the dismissal of the teacher was affirmed.
In Van Peursem v. Consolidated Independent School District of Laurens et al., 240 Iowa 1100, 38 N.W.2d 615, the Supreme Court of Iowa held that failure to give a teacher notice of a meeting did not invalidate the teacher's discharge. The court found that the defect of notice was not material where the teacher and all board members were present, complaints before the board were considered, and the teacher participated in the meeting.
In School District No. 1 in Arapahoe County v. Thompson, 121 Colo. 275, 214 P.2d 1020, the Supreme Court of Colorado considered a situation where the procedure set forth in the state's teacher's permanent tenure act was followed, except that no oath or affirmation was administered to the witnesses. The court found that the proceeding was fair and that due process had been preserved.
It was also alleged in that case that the notice to the teacher of the charges for dismissal lacked definite specifications and was therefore prejudicial. After stating that the type of notice was incorrect, the court held that "the record indicates that the hearing was conducted in the proper manner, . . . . the notice was sufficient to advise that the hearing was to be had and that Thompson was not prejudiced by the lack of additional specifications in the notice itself."
There are numerous cases in our jurisprudence stating the view that there is a presumption of validity of administrative pronouncements and that the courts are loath to interfere and override actions of School Boards. Williams v. Kimbrough, D.C., 295 F.Supp. 578; Chantlin v. Acadia Parish School Board, La.App., 100 So.2d 908. Inasmuch as the plaintiff received far more protection than the bare-boned requirements of the law, we opine that she has no cause for complaint and that the lower court's ruling should therefore be maintained.
For the above and foregoing reasons the judgment of the District Court is affirmed at the costs of plaintiff-appellant.
Affirmed.
*801 HOOD, Judge (dissenting).
I agree with my colleagues that the action of the defendant school board purporting to dismiss plaintiff under LSA-R.S. 17:442 is illegal and invalid. I also agree that the school board might have dismissed plaintiff legally under LSA-R.S. 17:443, even though she was not a permanent teacher, if defendant had complied with the provisions of that section, if plaintiff had been given proper notice, and if the charges and the evidence had been sufficient to warrant that action.
The record shows that the provisions of LSA-R.S. 17:443 were not complied with. Plaintiff was never notified that a hearing would be held under the cited section of the Revised Statutes. She was not notified that the hearing would be before the School Board or that the board would consider dismissing or discharging her. In my opinion the so-called "charges" which were made against her were not sufficient to warrant her dismissal, even if those charges had been proved, and I think the record shows that the "charges" were not proved. For these reasons I respectfully dissent from the judgment rendered by the majority.
The letter which Ben L. Green, Jr., Parish Superintendent of Schools, wrote to Miss Fleming on August 9, 1971, specifically stated that the proceedings were being conducted pursuant to the provisions of LSA-R.S. 17:442. That could not have been a typographical error, because a copy of the first paragraph of Section 442 was enclosed with the letter for Miss Fleming's information. Plaintiff was a probationary teacher, and Section 442 related solely to probationary teachers, so it was the correct section of the Revised Statutes for defendant to use if it intended to consider dismissing plaintiff. Certainly, in view of the notice which was sent and the fact that plaintiff fell into the category of teachers to which Section 442 applied, she had the right to assume that the proceedings would be conducted under that section of the Revised Statutes.
LSA-R.S. 17:443 applies only to permanent teachers. Since Miss Fleming was not a permanent teacher, and since she was never informed prior to or during the hearing that the proceedings were being conducted under that section of the Revised Statutes, she had no conceivable reason to believe that the provisions of Section 443 were to be invoked.
The majority agrees that the proceedings were not conducted pursuant to the provisions of Section 442, and that the action of the school board was illegal insofar as it purported to dismiss plaintiff under that section of the Revised Statutes.
My colleagues have held, however, that it is of "no consequence" that plaintiff was misinformed and mislead as to the nature and possible consequences of the hearing, and that it is immaterial that she did not have legal counsel and that no witnesses had been called to testify in her behalf. They reason that plaintiff should have known all along that the hearing was being held under Section 443, because that is the only section which specifically requires a hearing, the language used in the notice was similar to that contained in Section 443, and plaintiff is "an educated member of the teaching profession and a citizen presumed to know the law." I agree that plaintiff is well educated and is presumed to know the law, but that is an additional reason why she had the right to rely on the notice given to her that the proceedings were being conducted under Section 442. If she had obtained legal advice before the hearing, I believe any attorney would have advised her that the proceedings were being conducted under Section 442, as specifically stated in the notice. He could not have advised her otherwise.
It is true that there is no requirement in LSA-R.S. 17:442 that a hearing be held to effect the dismissal of a probationary teacher. There is no provision in that section, however, which prohibits a hearing, and I know of no reason why one could or should not be held. Section 442 provides that a probationary teacher can be dismissed *802 only "upon the written recommendation of the parish or city superintendent of schools." No such recommendation has ever been made by the Parish Superintendent in this case. The letter which Mr. Green, the superintendent, wrote to plaintiff stated that a "hearing" would be held under Section 442. It did not state that the hearing was to be held by the school board, or even that it would be conducted in the presence of that board. There was nothing in the letter which indicated that the school board might consider dismissing plaintiff as a teacher following that hearing. I know of no reason why the superintendent could not hold a hearing to determine whether he should submit a written recommendation that the probationary teacher be dismissed.
The most reasonable and logical interpretation which could have been given to the letter written by Superintendent Green was that the hearing was to be conducted before him, the superintendent, at the school board office to enable him to determine whether he would submit a written recommendation to the school board pursuant to the provisions of LSA-R.S. 17:442. I do not think the evidence justifies a holding that plaintiff should have known that the hearing was to be conducted under the provisions of Section 443 instead of Section 442, as stated in the notice, or that it was to be conducted by the school board instead of the superintendent, or that the purpose of the hearing was to determine whether she should be dismissed as a teacher.
If my interpretation of the majority opinion is correct, my colleagues admit that defendant did not comply with either Section 442 or Section 443. They hold, however, that the discharge of plaintiff nevertheless is valid for three reasons, namely: (1) Plaintiff waived her right to a notice of the hearing by being present and participating in it; (2) plaintiff will not be permitted to complain, because she was entitled only to "scant protection" anyway, and she "received more than she was legally entitled to;" and (3) plaintiff was not prejudiced by the failure of defendant to specify the charges against her or to give her proper notice. I find no merit to any of these reasons.
The majority states, in effect, that at the hearing Miss Fleming waived proper notice and consented to proceed with the hearing. The following is a copy of the pertinent part of the proceedings conducted before the school board:
"W. C. Falkenheiner: Miss Fleming, under the statute under which this is being conducted you have a right to have a public hearing or a right to have a private hearing and each employee of the school board has to be notified of that fact as were the others in this case. You have the right to designate whether you wish the hearing to be public or private. If you wish it to be public it will be public. If you wish it to be private it will be private.
"Miss Fleming: The meeting can be public.
"W. C. Falkenheiner: It can be public.
"Miss Fleming. Yes.
"W. C. Falkenheiner: All right. Do you have any preliminary objections or motions to the procedure or request from the school board at time before entering into the case itself, Miss Fleming?
"Miss Fleming: Do you mean would I like to give a testimony?
"W. C. Falkenheiner: No. You have that chance when the school board finishes its testimony. You will have that chance.
"Miss Fleming: Oh, I see.
"W. C. Falkenheiner: This preliminary is like if you didn't get enough notice or would like to have a lawyer present.
"Miss Fleming: I see. No, sir. Not at this time. I would rather present my case."
*803 This part of the record serves as the basis for the majority's holding that plaintiff waived proper notice. It does not convince me that Miss Fleming intended to waive notice or to subject herself to a hearing under LSA-R.S. 17:443. There was no suggestion anywhere in the record that the hearing was being conducted under the last mentioned section of the Revised Statutes. Plaintiff had not consulted a lawyer prior to that hearing, and the record shows that she did not understand that the letter written by Principal Jackson constituted the "charges" against her. While Superintendent Green was testifying, plaintiff asked if he could tell her what the charges were against her, and she obviously was surprised to learn that Jackson's letter was considered as a formal charge against her.
Four cases are cited by the majority as authority for their holding: Brahy v. Federal Radio Commission, 61 App.D.C. 204, 59 F.2d 879 (D.C., 1932); State v. East Baton Rouge Parish School Board, 36 So.2d 832 (La.App. 1 Cir. 1948); Stewart v. East Baton Rouge Parish School Board, 251 So. 2d 487 (La.App. 1 Cir. 1971); and Reed v. Ville Platte Fire & Police Municipal Board, 263 So.2d 924 (La.App. 3 Cir. 1972).
The Brahy case, decided in 1932 by the Court of Appeals of the District of Columbia, related to the renewal of a license of a broadcasting station in New York. The two cases instituted against the East Baton Rouge Parish School Board related to the dismissal of school bus drivers, and both cases thus involved statutes other than the one before us here. The Reed case involved a rule change by the Ville Platte Municipal Fire & Police Civil Service Board. None of the cited cases thus have any application to the issues presented here.
My colleagues have overlooked the many pertinent cases which related specifically to the Teacher Tenure Act involved here. In Hill v. Caddo Parish School Board, 250 So.2d 446 (La.App. 2 Cir. 1971), for instance, the court said:
"The duty of a school board to follow the statutory provisions governing dismissal of a teacher is purely ministerial and may be coerced by mandamus. It is our opinion that a teacher covered by the tenure law who has been discharged without compliance with the provisions of the law is entitled to a writ of mandamus directing reinstatement and, incidentally, payment of salary." (Emphasis added).
In State v. Rapides Parish School Board, 1 So.2d 334 (La.App. 2 Cir. 1941), the same court said:
"Regardless of the cause therefor, a permanent teacher may not be discharged as such except after strict compliance with the statutory provisions on the subject." (Emphasis added).
Our jurisprudence is established to the effect that the Teacher Tenure Act (LSA-R.S. 17:441-444) should be liberally construed in favor of the class of persons designed to be its primary beneficiaries, the teachers, and that the school boards thus should be held to strict compliance with the statute. Andrews v. Union Parish School Board, 191 La. 90, 184 So. 552 (1938); Lewing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462 (1959); Lea v. Orleans Parish School Board, 228 La. 987, 84 So.2d 610 (1955); Kennington v. Red River Parish School Board, 200 So. 514 (La.App. 2 Cir. 1940).
In my opinion the judgment rendered by the majority is inconsistent with the above cited jurisprudence. There has not been a strict compliance with either Section 442 or Section 443 in this case. I do not think plaintiff has waived her rights under either of those statutes, and I feel that her dismissal thus was illegal.
I cannot subscribe to the theory that since plaintiff, as a probationary teacher, had less protection from unlawful dismissal than did a permanent teacher, the rights which she does have can be ignored. My view is that there must have been a strict compliance with either Section 442 or Section *804 443 in order for the dismissal of plaintiff to be legally effective, and that the failure of defendant to comply with either of those statutory provisions renders the attempted dismissal invalid.
I cannot understand the reasoning of my colleagues in holding that plaintiff was not "prejudiced" or "injured" in this case. She has been dismissed as a teacher in the schools of Concordia Parish. She has lost her salary and the right to acquire the tenure of a permanent teacher. She could not have been dismissed on September 2, 1971, and thus she would not have sustained such an injury, if the provisions of the Teacher Tenure Act had been properly applied. In my opinion plaintiff has been "injured" by the illegal action of the school board and by the failure of the majority to apply that act.
The majority did not discuss the "charges" which were filed against plaintiff, or the evidence which was presented by defendant to support those charges. In my opinion the letters written by Principal Jackson and Superintendent Green are not sufficient to constitute "charges" under LSA-R.S. 17:443.
Superintendent Green, of course, made no charges or recommendations of any kind. He merely attached to his letter a copy of the so-called "charges" which had been made by Principal Jackson.
It is significant that Principal Jackson did not recommend that Miss Fleming be dismissed or discharged as a teacher. He simply recommended that she not be reemployed "at her present position" at Clayton Elementary School. He apparently had no objection to her re-employment at some other position at Clayton Elementary School, or to her re-employment at the same position at some other school in Concordia Parish. In any event, neither the Principal nor the Parish Superintendent has ever recommended that plaintiff be discharged completely as a teacher.
Jackson's letter contains only the following vague criticisms of plaintiff's work as a teacher: (1) Plaintiff spends much of her time getting her students quiet for instruction; (2) the principal's suggestions as to how the discipline problem might be resolved were not accepted by plaintiff; and (3) plaintiff did not sign "observation forms" acknowledging the evaluation or suggestions made by the principal.
In my opinion these "charges," even if proved, would not warrant the dismissal of plaintiff. Actually, the evidence shows that plaintiff had a unique problem in that her class was composed of students who varied greatly in ages and in levels of intelligence, making it impossible to teach or even to interest these different groups in the same subjects or activities. Some of her pupils had high I.Q.'s, but the principal also assigned to her class several pupils who were mentally retarded. The mentally retarded children were unruly, and it was impossible to teach them the same subjects which were taught to the other pupils. Plaintiff made repeated but unsuccessful efforts to have the mentally retarded children transferred to special education classes, where they belonged. One such child, who was much older than the other children and who constantly disrupted the class, was put on a "waiting list" for the special education classes, but the child was never transferred.
Because of the mentally retarded children in her class, it was necessary for plaintiff to spend more time than ordinarily would be required in keeping them quiet. The principal did not explain these circumstances in his vague accusation that much of her time was spent in getting the children quiet, but a reading of his letter shows that he himself admitted that the students were of different levels of intelligence and that it placed an unusual "burden" on plaintiff.
The vague and unspecified charge that plaintiff did not accept the principal's suggestions as to how the discipline problem could be corrected also is not supported by the evidence. At the hearing, the principal conceded that the only conference he ever had with plaintiff was on one occasion *805 when he told her "not to hesitate to send anybody to me that she felt was disturbing the class." Plaintiff thereupon sent pupils to him exactly in accordance with his instructions. In his letter to the superintendent, Principal Jackson stated that he suggested "more challenging classwork." Whether such a suggestion was or was not made is immaterial, because the evidence shows that Miss Fleming took great pains to give the children more challenging classwork. She discussed that subject with two Instructional Resource Teachers, and thereafter visited the Media Center where she obtained additional materials to "help her with her slow group."
The evidence shows that Miss Fleming signed several "observation forms," but that she refused to sign some of the five forms which the principal submitted to her because on each such form there had been filled in an incorrect statement that that was her "first year" of teaching. She had taught school years before that, and she justifiably was unwilling to sign a statement which might adversely affect her status as a teacher. Also, a supervisor of teachers informed her that "she didn't have to sign it." In any event, plaintiff's refusal to sign some observation forms cannot be construed as wilful neglect of duty or incompetency.
In Johns v. Jefferson Davis Parish School Board, 154 So.2d 581 (La.App. 3 Cir. 1963), eleven specific charges of incompetency and neglect of duty were filed against the plaintiff under LSA-R.S. 17:443. Following a hearing, the school board found him guilty of eight of those specific charges, and ordered him dismissed as a permanent teacher. The trial court affirmed the action of the school board. We reviewed the evidence and concluded that it supported two and a part of another of the charges of incompetency. Yet, we set aside the judgment of the trial court and remanded the case primarily because the board had admitted evidence of delinquences of plaintiff beyond those which had been formally charged.
The facts in the Johns case were not nearly as favorable to the plaintiff as are the facts and circumstances in the instant suit. I do not believe the decision in this case can be reconciled with Johns.
In Dugas v. Ascension Parish School Board, 228 La. 80, 81 So.2d 817 (1955), the court held that plaintiff was not estopped from contesting the action of the school board simply because he was present at the hearing and participated in the proceedings held therein. In that connection the court said:
"Besides, the plea is wholly without merit, being based on the untenable assumption that plaintiff is estopped from asserting his legal rights because of his presence at the meeting at which the purported abolition of his position was voted and by his acceptance of salary to the end of August, 1948."
In my opinion, the evidence in this case establishes that plaintiff was an efficient teacher. She is not even charged with neglect of duty, incompetency or dishonesty, and there is not one shred of evidence to support the vague and general criticisms of her performance as a teacher.
The majority has pointed out that the defendant school board was operating under some rather drastic orders from a federal district court, and I think the record shows that the school board, in order to "play it safe," dismissed plaintiff as a teacher, on insufficient charges and evidence, rather than run the risk of being held in contempt by the federal court. I can understand the extremely difficult position in which the school board found itself, and I am convinced that the members were sincere and acted in good faith. I do not believe, however, that the federal district court intended for its orders to produce the unfair result which the majority has sanctioned here.
*806 I feel that plaintiff in the instant suit was wrongfully dismissed as a teacher. In my opinion the judgment appealed from should be reversed, and plaintiff should be reinstated as a teacher in the Concordia Parish School System.
For these reasons, I respectfully dissent.