612 So.2d 975 (1993)
Rita EASTERLING, Plaintiff-Appellee
v.
MONROE CITY SCHOOL BOARD, et al., Defendants-Appellants.
No. 24326-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
Jones & Smith Law Offices by Benjamin Jones, Monroe, for defendants-appellants.
Crawford & Anzelmo by Brian E. Crawford and Wesley S. Shafto, III, Monroe, for plaintiff-appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
*976 LINDSAY, Judge.
The defendants, the Monroe City School Board and its individual members, appeal from a trial court judgment granting a writ of mandamus in favor of the plaintiff, Rita Easterling. The trial court vacated the school board's decision to terminate the plaintiff from her employment as a non-tenured contract teacher and ordered that she be reinstated as a teacher and coach at Neville High School with full back pay and privileges. The trial court also prohibited the school board from taking any further action against the plaintiff unless it was in compliance with LSA-R.S. 17:81.5 and the school board's formal procedures for separation of school employees. For the reasons assigned below, we affirm the trial court judgment.

FACTS
On January 28, 1992, the plaintiff, who is white, was coaching the Neville girls' basketball team at a varsity game. During a time-out, she directed a racial slur at her players, who were black.
Charles Stewart, the principal of Neville High School, was informed of the incident that night. The next morning he began an investigation. Mr. Stewart interviewed the plaintiff, the players, and some of their parents. At a meeting later that day, the plaintiff apologized to the players, their parents, and Mr. Stewart.
Also on January 29, 1992, Superintendent James L. Pughsley of the Monroe City school system learned of the incident and initiated his own investigation. He likewise met with the plaintiff, the players, and their parents. The plaintiff submitted a written report to the superintendent, as requested by her principal. She also apologized to the superintendent.
On February 4, 1992, the plaintiff received written notification that her principal, Mr. Stewart, was recommending that she be suspended from coaching without pay for five days. He also recommended that her coaching activities be monitored by an administrator for the rest of the school year. Mr. Stewart formally reprimanded her and directed that a copy of the letter be placed in her permanent record.
At about the same time, the superintendent drafted a letter to the plaintiff in which he outlined his specific findings of fact. He found that the incident appeared to be an isolated situation. However, he stated she had used "[n]egative verbal forms of motivation" in the past. He also noted the plaintiff's apologies and stated that school personnel were surprised by the incident because the plaintiff had never exhibited any prior racially motivated attitudes or behavior.
In his letter, the superintendent proposed a more severe punishment than that suggested by the principal. Mr. Pughsley stated that he intended to suspend the plaintiff without pay from all basketball coaching duties for the rest of the school year and suspend her without pay for five days as a classroom teacher. Any subsequent racial slurs would result in her immediate termination, and her overall performance would be closely monitored and evaluated at the end of the school year.
However, this letter, which the superintendent had anticipated giving to the plaintiff at a meeting on February 5, 1992, was never presented to her. On February 4, 1992, the superintendent informally apprised the school board of the situation during a break at a regular school board meeting. He also shared his recommendations with the board. Several board members voiced their disagreement with his proposed disciplinary procedures.
Consequently, the plaintiff received a notice of suspension from the superintendent, dated February 5, 1992, immediately suspending her from all teaching and coaching duties, without pay. The letter further stated that the board would make a final determination on her employment status at its meeting on February 18, 1992. She also received a letter from the superintendent, dated February 11, 1992, wherein he informed her that she had the right to request a public or private hearing before the board.
At the regular meeting on February 18, 1992, the plaintiff's request for a *977 closed/private hearing was denied. School board member Tereatha Chisley moved that the plaintiff be fired. The motion was seconded, but Sharon Taylor, the school board president, ruled it out of order because it was contrary to the superintendent's recommendation. Board member Nerissa Bryant moved to accept the superintendent's recommendation, and this motion was seconded. However, board member Van Brass made a substitute motion to override the superintendent's recommendation and to terminate the plaintiff. This motion passed by a vote of 4 to 3. The only discussion on this matter at the meeting pertained to the procedural aspects of the vote. There was never any discussion of the substance of the charges against the plaintiff. Accordingly, the plaintiff's employment was terminated.
On February 24, 1992, the plaintiff filed suit in the district court, seeking a writ of mandamus and injunctive relief. Named as defendants were the Monroe city school system and its seven school board members. The plaintiff maintained that her termination was illegal because the school board failed to follow its own policy for separation of employees. Specifically, she alleged that the board did not have a written recommendation of termination from the plaintiff's immediate supervisor, Mr. Stewart, or from the superintendent.
The defendants filed an answer, an exception of unauthorized use of summary proceedings, and an exception of no cause of action. In their answer and exception of no cause of action, the board contended that the plaintiff was not entitled to the protection of the Teachers Tenure Act because she was not a certified teacher. The defendants further contended that since LSA-R.S. 17:81 gives a majority of the board the power to hire teachers, they must also have the corresponding power to fire them.
On March 5, 1992, the trial court denied the defendants' exceptions. A hearing was then held on the rule for preliminary injunction and writ of mandamus. At the conclusion of the hearing, the court took the case under advisement. On March 10, 1992, the trial court issued written reasons and granted the plaintiff's request for mandamus to the extent that her termination was vacated and set aside. The court ordered that she be reinstated as a teacher and coach with full back pay and privileges as per her current contract of employment.
In its written reasons for judgment, the trial court found that the plaintiff was classified as a curricular 665 program teacher, which allowed her employment on a semester-to-semester basis because she had not yet been certified. The court found that the plaintiff, who conceded that she was neither a tenured nor a probationary teacher, was entitled to the protection of LSA-R.S. 17:81.5, which deals with the dismissal of non-tenured school employees. It rejected the defendants' argument that its general power to hire also allowed it to fire teachers as "a distorted assumption" because the board did not have "unfettered discretion" to terminate employees. The trial court found that the school board's own policy mandated that it be held to a standard of strict compliance in carrying out its procedures.
The defendants sought a suspensive appeal on the grounds that the appeal was partially based on a money judgment. However, on March 17, 1992, the trial court ordered that only a devolutive appeal be granted.
In the defendants' appeal, they assert the following assignments of error: (1) the trial court erred in granting the plaintiff's writ of mandamus and preliminary injunction on the basis that the school board was obligated to follow its established procedure for separation of school employees; (2) the trial court erred in denying the defendants' exception of no cause of action; and (3) the trial court erred in denying the defendants' request for a suspensive appeal.

POLICY FOR SEPARATION OF EMPLOYEES
The defendants argue that the school board is entitled to terminate an employee even if the superintendent does not recommend such action. They insist *978 that they simply upgraded the discipline recommended by the superintendent from suspension to termination. To the contrary, the plaintiff argues that the individual board members breached not only state law, but also the school board's own written policies and code of ethics.
The plaintiff argues that, as a non-tenured, non-probationary teacher, she is covered by LSA-R.S. 17:81.5, which states, in relevant part, as follows:
Not later than January 1, 1988, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing school employees who have not attained tenure in accordance with applicable provisions of law and whose dismissal is not a result of a reduction in force, as provided in R.S. 17:81.4.... [Emphasis ours.]
In compliance with LSA-R.S. 17:81.5, the Monroe City School Board adopted a specific policy entitled "Separation of School Employees." This policy, which was in effect when the plaintiff's employment was terminated in February, 1992, mandates the following procedure for the dismissal of "any non-tenured employee":
(1) Any employee's immediate supervisor, who feels that dismissal is appropriate, shall make a written recommendation to the Superintendent or his designee outlining the reasons for the recommendation. The employee shall be provided a copy of such recommendation.
(2) The Superintendent or his designee shall thereafter conduct a conference with the employee, the employee's immediate supervisor, and if needed, other appropriate personnel. Those recommending the dismissal of the employee shall be asked therein to explain their reasons for such recommendation, and the employee shall be given the opportunity to rebut those reasons and/or to explain his position. The conference may be recessed if the Superintendent or his designee feels that additional information is needed before a decision can be made.
(3) If, after considering the information presented in the conference and any other information considered important, the Superintendent or his designee feels that dismissal is appropriate, then the Superintendent or his designee shall make a written recommendation of dismissal to the School Board. The recommendation shall outline the reasons therefore and a copy of it shall be provided to the employee.
(4) The School Board will be asked to act upon the recommended dismissal at the next meeting following receipt of such written recommendation.
(5) A non-tenured employee who has been recommended to the Board for dismissal shall not be entitled to a hearing before the Board, unless a majority of the members vote to afford one. [Emphasis ours]
The members of the school board are bound by their code of ethics, which provides, in relevant part:
18. Recognizing the rights of the employee and the Board, I will insist on following completely the procedure stipulated by law in every case where a teacher or other employee is being tried for incompetency or other causes which might subject him to dismissal.
We find that LSA-R.S. 17:81.5 was the applicable statute governing the plaintiff's situation. The record is clear that the plaintiff was not a tenured teacher under LSA-R.S. 17:443. Nor was she a probationary teacher under LSA-R.S. 17:442 because the definition of "teacher" in LSA-R.S. 17:441 mandated that she hold a teacher's certificate and that her legal employment require such teacher's certificate. The plaintiff was not a certified teacher. Consequently, the defendant was a "school employee" within the meaning of LSA-R.S. 17:81.5.[1]
*979 As previously mentioned, the school board complied with LSA-R.S. 17:81.5 by drafting a procedure for the separation of employees. The provisions of the separation policy adopted by the Monroe City School Board are similar to those of LSA-R.S. 17:442 in that both require a written recommendation of dismissal from the superintendent with reasons. (The separation policy only requires "reasons" while LSA-R.S. 17:442 specifies "valid reasons.") Under LSA-R.S. 17:442, the recommendation of dismissal by the superintendent is a prerequisite to a valid dismissal of a probationary teacher. Booker v. Richland Parish School Board, 393 So.2d 785 (La.App. 2d Cir.1981).[2]
In Fleming v. Concordia Parish School Board, 275 So.2d 795 (La.App. 3d Cir.1973), writ denied, 279 So.2d 204 (La.1973), a probationary teacher was dismissed even though there was no recommendation from the superintendent that she be fired. Thus, the court found that her dismissal would be invalid under LSA-R.S. 17:442, which required a written recommendation of dismissal from the superintendent to dismiss a probationary teacher. However, the court upheld her dismissal because the school board afforded her the greater protection of a hearing under LSA-R.S. 17:443, the dismissal procedure for tenured teachers. In the present case, the plaintiff was afforded no hearing.
The school board's powers, while broad, are not without restraints. Although LSA-R.S. 17:81(A) grants school boards their powers in hiring teachers, their powers in terminating teachers are tempered by such statutes as LSA-R.S. 17:441 et seq., and LSA-R.S. 17:81.5.
The Monroe City School Board was required by LSA-R.S. 17:81.5 to establish a separation policy by which non-tenured employees would be dismissed. The school board was further required by this statute to follow the procedure which it established in its policy. The school board's own code of ethics mandated that the board follow the established procedures in matters involving teacher misconduct. (One school board member testified at the hearing that, not only was he unfamiliar with this particular section, he had never read the code of ethics.)
The policy of separation, which was drafted by the school board itself, required that both the employee's immediate supervisor and the superintendent recommend the employee's dismissal. The school board's clear intent, as demonstrated in the procedures it established, was to require a termination recommendation from the school authorities, upon whose recommendation the school board would then act. In this case, neither Mr. Stewart, the Neville High School principal and the plaintiff's immediate supervisor, nor Mr. Pughsley, the superintendent, recommended termination. Both recommended only suspension. In fact, at the district court hearing on the plaintiff's petition, Mr. Stewart specifically testified that the plaintiff was fired against his recommendation. Dr. Pughsley also testified that his only recommendation was the one contained in the memorandum which he shared with the school board on February 4, 1992. Additionally, Ms. Taylor, the school board president, testified that she voted against the motion to fire the plaintiff because she felt that the matter fell within the jurisdiction of the superintendent and his recommendation should have been followed.
Consequently, we find that since the defendants failed to comply with their own established policy, the trial court was correct in granting the plaintiff's petition for a writ of mandamus and preliminary injunction.
Finally, mandamus is the appropriate procedural remedy for a teacher who has been dismissed without compliance with the school board's separation policy. See Hill v. Caddo Parish School Board, *980 250 So.2d 446 (La.App. 2d Cir.1971). Although the court in Hill ultimately held that a teacher with only a temporary certificate was not entitled to the protection of the Teachers Tenure Act, it also found that mandamus was the proper procedural remedy for enforcement of the rights of a teacher covered by that act where the teacher was discharged without compliance with the provisions of the tenure laws. We believe that this principle is equally applicable where the school board has made specific provisions governing the dismissal of an employee such as the plaintiff and then totally ignores those established procedures.

OTHER ASSIGNMENTS OF ERROR
The defendants also argue that the trial court erred in denying its exception of no cause of action and in refusing to grant a suspensive appeal. The plaintiff maintains that these issues, especially the question of the defendants' right to a suspensive appeal, are moot and should have been raised previously by an application for supervisory writs.

No Cause of Action
The defendants maintain that the evidence presented to the trial court at the hearing on the exception of no cause of action made it abundantly clear that the plaintiff was not entitled to the protection of the Teachers Tenure Act, that she had been accorded all the due process to which she was entitled, and that there was substantial basis for the school board's action.
Although the plaintiff was not covered by the Teachers Tenure Act, she was entitled to the protection of the school board's own written procedures, as previously discussed. Therefore, we find that the trial court properly denied the defendants' exception of no cause of action.
Accordingly, this assignment of error is meritless.

Defendants' Right to Suspensive Appeal
As to the trial court's denial of a suspensive appeal, this matter is effectively moot as we are unable to give the defendants any meaningful relief from that ruling at this point. The defendants should have raised this issue by application for supervisory writs. Thus, we find that it is unnecessary for us to address this assignment of error.

CONCLUSION
The judgment of the trial court is affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] However, see and compare Wilhelm v. Vermilion Parish School Board, 598 So.2d 699 (La.App. 3d Cir.1992), wherein it was held that LSA-R.S. 17:81.5 refers to school employees who are not teachers. The court made no reference to the definition of "teacher" in LSA-R.S. 17:441. We also note that the Wilhelm case involved a non-tenured probationary teacher, and the court found that LSA-R.S. 17:422 was applicable.
[2] LSA-R.S. 17:492, which provides the procedure for dismissal of probationary bus operators, is similar to LSA-R.S. 17:442. A dismissal of a probationary school bus operator is invalid if not preceded by the required written recommendation of the superintendent. See Jones v. Richland Parish School Board, 488 So.2d 1045 (La.App. 2d Cir.1986), writ denied, 491 So.2d 22 (La.1986).