902 So.2d 1173 (2005)
Jesse SHIERS, Plaintiff-Appellant
v.
RICHLAND PARISH SCHOOL BOARD, Defendant-Appellee.
No. 39,649-CA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
*1174 Fewell-Kitchens by Richard L. Fewell, Jr., Robert T. Knight, for Appellant.
David P. Doughty, Office of District Attorney, Fifth Judicial District, Civil Division, for Appellee.
Before CARAWAY, PEATROSS and LOLLEY, JJ.
CARAWAY, J.
In this case, an untenured teacher who had taught in the parish for over two years filed suit against the school board alleging the board's failure to reassign him to a different school in the parish. The school board moved for summary judgment on the strength of evidence showing that plaintiff had refused the board's offer to return to the same school in which he had previously taught. Finding that the plaintiff had not been dismissed from his employment and ultimately decided against returning to his school himself, the trial court granted the motion for summary *1175 judgment. Finding no disputed facts surrounding the trial court's ruling and no error of law, we affirm.

Facts
Matters of record reveal that the appellant, Jesse Shiers ("Shiers"), was first employed as a teacher by the Richland Parish School Board (the "Board") beginning in February, 1997. Shiers taught social studies at Rayville Junior High School ("RJHS"). At the time of his employment, Shiers was uncertified, having not fulfilled the necessary qualifications for teachers as set forth by the Louisiana State Board of Elementary and Secondary Education ("BESE").
Shiers' principal at RJHS, Dan Lane, testified that because of Shiers' class management problems, he was monitored in a "formal intensive assistance program" during the fall of 1998. At the end of the 1998-1999 school year in May, Lane testified that he "informally told [Shiers] that I thought he should consider going to another location and starting over, that as a fellow educator, I thought that might be a wise thing to do." The next day, on May 27, 1998, Shiers wrote the following letter to Bonnie Adams, the superintendent of Richland Parish schools:
Ms. Adams,
I am presently employed at Rayville Jr. High in Richland Parish. I would like to terminate my employment at Rayville Jr. High, and seek employment elsewhere in the parish. I feel like I would be better suited in another location in the parish. This change I feel would benefit me as a teacher.
 Sincerely,
 /s/ Jesse D. Shiers
The Board received Shiers' correspondence on May 28, 1999, and, considering it as a letter of resignation, approved it as such at the June 1 regular meeting. Correspondence confirming this action was mailed to Shiers the following day. Upon learning of that action, Shiers disputed the resignation, asserting that he was merely seeking a transfer to a different school in the district and did not intend to resign his teaching position. Shiers met with Adams in July to explain the misunderstanding.
After clarifying the intent of his May letter, Shiers admitted that he was subsequently offered a different teaching position at RJHS for the next school year. Although he accepted the position initially and reported back to RJHS in August 1999, his return to the school lasted only for one day. Lane testified in his deposition as follows:
A. Mr. Shiers was coming back. And we had a specific class for him in mind. It was a small number of students. He came in one day and just observed the class and spent time and got comfortable with it to see if he would like it basically is what we offered to see if he wanted that. At the end of the day, myself and Carol White, who is our school counselor and Tommy Woodson, who is our at risk coordinator, all met with Mr. Shiers. And I asked him do you want"Do you want this position?" And he said, "Yes, sir." And I went on to explain to him that my concerns from last spring that I voiced to him at the end of the year were still the same concerns, that management would be a problem, that I would help him any way I could and try to help him improve. And after about eight or ten weeks, if I didn't see marked improvement, then I would have to make a decision. And hopefully he would improve. But if he did not, then I would have to pursue another intensive assistance plan, paper *1176 work and that that would not be a good thing, and that I very much urged him to give it his best shot to improve. And that Ms. White would help him. I would help him and Coach Woodson would do anything we could to help him. And he understood and appreciated our concern and said he still wanted the job.
Q. And then what happened?
A. We set him up. He had the room. He had the keys and the books and said he would be there in the morning. And that's the last I saw him.
Q. So he didn't come the next day?
A. The next morning, as I understand, he came there before I did and turned in his keys and just wrote a note to me, "Mr. Lane, here are my keys," I think is basically what it said. And I didn't see him again.
Shiers testified that Lane told him upon his return to RJHS that Lane would scrutinize his teaching efforts during the 1999-2000 school year. Shiers testified that he then decided not to return to RJHS after a telephone conversation with a school board member, William Burgess, who advised him to tell Lane that he was not coming back and that he would be reassigned to another school. However, the next day, superintendent Adams told Shiers there were no other openings and that he should return to RJHS. Additionally, according to Adams' testimony, which was not disputed by Shiers, she continued until October of 1999 to offer Shiers the job at RJHS along with her assurances that the principal, Lane, "would work with him and that we would do everything we could to help him make improvements."
Regarding Shiers' certification as a teacher, the evidence shows that he obtained all of the educational training required for teacher certification by the spring of 1999. Yet, he did not apply for a teacher's certificate until February 17, 2000, and BESE issued the certificate on April 10, 2000.
Shiers filed suit against the Board on May 23, 2000. His petition alleged that he was a certified teacher. The primary assertion in the suit was that while he was advised by the Board that he would be transferred to another parish school, he was never reassigned. His prayer for relief includes a request for an order from the court assigning him to a school in Richland Parish.
Thereafter, the Board moved for summary judgment. The Board alleged in its motion that after his resignation, Shiers was never officially rehired for the 1999-2000 school year and, as an uncertified teacher, was not entitled to any kind of hiring preference. After a hearing on the Board's motion for summary judgment, the trial court granted the motion and dismissed Shiers' claims. This appeal followed.

Discussion
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Sanders, 33,865 (La.App. 2d Cir.9/27/00), 768 So.2d 739. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The initial burden of proof remains with the mover and is not shifted to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof.
However, if the moving party will not bear the burden of proof at trial, the movant *1177 is not required to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claims. La. C.C.P. art. 966(C)(2). The burden then shifts to the non-moving party to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art. 966(C)(2); Racine v. Moon's Towing, 01-2837 (La.5/14/02), 817 So.2d 21. Once the burden has shifted, the opponent must produce factual support to avert the summary judgment. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. arts. 966(C)(2); Racine, supra. Appellate review of the grant or denial of summary judgment is de novo. Ross v. Conoco, Inc., 02-0299 (La.10/15/02), 828 So.2d 546. Viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant, we limit ourselves to the version of the events most favorable to Shiers which is supported by the record. Atkins v. Shilo Enterprises, Inc., 39,100 (La.App. 2d Cir.12/15/04), 889 So.2d 487.
The Louisiana Constitution and legislature entrust the administration of the school system to the school board of each individual parish. The Board is vested with broad discretion in the administration of the school system, and judicial review is required only to ensure that the school boards do not abuse this discretion. That review, however, is limited and where there is a rational basis, which is supported by substantial evidence for the school board's discretionary determination, the courts cannot and should not substitute their judgment for that of the school board. Harris v. West Carroll Parish School Bd., 605 So.2d 610 (La.App. 2d Cir.1992), writ denied, 609 So.2d 255 (La. 1992).
Under La. R.S. 17:81(A)(1), a parish school board has the duty to determine the number of teachers to be employed, the authority to employ them by the year or by the month and the authority to fix their salaries. The school board selects teachers from recommendations made by the parish superintendent regarding the hiring and placement of the teachers. La. R.S. 17:81(A)(2). The duty to prescribe the qualifications necessary for certification and to provide for the certification of teachers rests with BESE. La. R.S. 17:7(6)(a)(i).
La. R.S. 17:413 expressly provides:
No person shall be appointed to teach without a written contract for the scholastic year in which the teaching is to be done. Every teacher shall hold a certificate of a grade sufficiently high to meet the requirements of his position. Parish superintendents of schools shall ascertain definitely, before contracting with a teacher, that the teacher holds a certificate issued by the state board of education.
This Section shall not be construed as requiring a written contract to be made for any scholastic year with regular and permanent teachers enjoying tenure.
The Teacher Tenure Law ("TTL") defines the status of Louisiana's public school teachers and outlines the procedures a school board must follow to discharge them. See La. R.S. 17:441, et seq. For the purposes of tenure, a teacher is an employee of a parish school board, including principals and superintendents, who holds a teacher's certificate and whose legal employment requires such a certificate. La. R.S. 17:441(1); Rousselle v. Plaquemines Parish School Bd., 633 So.2d 1235 (La.1994).
*1178 La. R.S. 17:442 provides in pertinent part:
Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.
Probationary teachers do not have a constitutionally protected liberty or property interest in the renewal of their teaching contracts which entitle them to procedural due process and their discharge does not involve substantive due process. Thus, a teacher who does not enjoy tenure in his position may be discharged by the school board without notice or a hearing so long as valid reasons for his discharge have been expressed in writing by the superintendent. McKenzie v. Webster Parish School Bd., 609 So.2d 1028, 1031 (La.App. 2d Cir.1992).
Regarding school employees who are not in tenured positions, La. R.S. 17:81.5 provides:
Not later than January 1, 1988, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing school employees who have not attained tenure in accordance with applicable provisions of law and whose dismissal is not a result of a reduction in force, as provided for in R.S. 17:81.4. The school board shall provide a procedure by which any employee, whose dismissal is governed by this Section, may participate in the development of the rules and policies. Such rules and policies shall be made available for public inspection within ten days after they are finally adopted.
In Easterling v. Monroe City School Bd., 612 So.2d 975 (La.App. 2d Cir.1993), this court reviewed the application of this statute in a situation where the plaintiff conceded that she was neither a tenured nor a certified teacher. This court ruled:
We find that La. R.S. 17:81.5[is] the applicable statute governing the plaintiff's situation. The record is clear that the plaintiff was not a tenured teacher under La. R.S. 17:443. Nor was she a probationary teacher under La. R.S. 17:442 because the definition of "teacher" in La. R.S. 17:441 mandated that she holder a teacher's certificate and that her legal employment require such teacher's certificate. The plaintiff was not a certified teacher. Consequently, the defendant (sic) was a "school employee" within the meaning of La. R.S. 17:81.5.
Persons holding a temporary or "T" certificate do not come within the provisions and protections of the TTL. Hill v. Caddo Parish School Bd., 250 So.2d 446 (La.App. 2d Cir.1971).
In this appeal, Shiers argues that there are genuine issues of material fact that preclude summary judgment and require reversal of the trial court. First, he claims that his BESE certification as a teacher is in dispute. Incidental to that issue, the evidence indicates that the Board employed numerous uncertified teachers in the parish. Thus, citing a BESE regulation for the interim emergency policy for hiring non-certified teachers, Shiers argues that his assignment as a certified teacher should have had priority over uncertified teachers and their positions in schools other than RJHS. Finally, he argues that the Board's assertion that Shiers never received an officially approved and written contract for the 1999-2000 *1179 school year raises a disputed issue of material fact.
Notably, there is no assertion by Shiers in his petition or to this court that he was inappropriately dismissed from his employment with the Board. He does not claim or argue that a violation of La. R.S. 17:81.5 requires his reinstatement as a teacher, as was the case of the untenured and uncertified teacher in Easterling, supra. Likewise, even if he may be considered a certified, probationary teacher, he is not asserting an improper dismissal or discharge, as was the case in McKenzie, supra.
Regarding the issue of the Board's re-employment of Shiers for the 1999-2000 school year, we find that both parties are in agreement that Shiers was re-employed and paid for at least one day at the beginning of the school year. While there had been confusion regarding the meaning of Shiers' letter of May 27, it is undisputed that Shiers was allowed to return to employment at RJHS in August. If all had gone well at that time, Shiers should have been provided with an officially approved and written contract for the school year. Shiers' brief return to his employment did not go well, and the facts of that dispute become the material issue for resolution in this case, not the lack of a written contract.
Shiers' decision to work only that one day and the dispute that ensued are best summarized in Shiers' own deposition description:
I was at the central office at 9:00 the next morning. Ms. Adcock said that Ms. Adams could not see me til (sic) 11, so I left and I come back. I met with Ms. Adams at 11. I said Ms. AdamsI walked in and I immediately I asked her, I said, Ms. Adams, where are you going to put me? Where am I going so I can go ahead and get things ready and get theschool has done started, you know, the teaching year. Ms. Adams said, well, I really want you to go back down there with Dan. I said you've done told me to turn my things in to Dan and tell him I'm not coming back. Why do you want me to go back down there? She said, well, that's the only opening I got. I said, Ms. Adams, I said, let me explain something to you. I'm not no attorney, but I do know a little bit about the law. If I'm a certified teacher and I'm actively seeking a teaching position and you do not give me a job where you already have six-six-five personnel hired I think it's illegal. She said, well, if it is, I don't know about it. I said, well, we will see. We will see. So in the meantime, she said, are you going back down there? I said no, ma`am.
Based upon this testimony, we find that employment with the Board for which Shiers seeks reinstatement was never denied to him. He could have continued in virtually the same employment setting at RJHS and does not dispute the Board's offer of employment to him at RJHS.
Regarding the unjustified problems Shiers claims to have experienced with Lane, he never reported any misconduct by Lane to the Board nor did he make improper actions by Lane the subject matter of this suit in the allegations of his petition. The fact disputes he now assigns as error in this appeal do not describe Lane's alleged actions as a material cause for his claim against the Board.
Instead, as he initially pled, Shiers continues to argue to this court that "if Mr. Shiers was considered a certified teacher by the Richland Parish School Board then he should have been given primary consideration for many of these positions" held by uncertified teachers at schools in the parish other than RJHS. *1180 Such position is not supported in Shiers' brief by any citation of authority in our law, and we do not interpret the cited BESE regulations to support that position. Much administrative discretion is afforded a school board and its superintendent to assign its teachers to the various teaching tasks, particularly an untenured teacher, whether certified or not.[1]
While the law clearly afforded Shiers certain rights had he been dismissed from employment, his assignment to RJHS for the 1999-2000 school year is conceded, and his dissatisfaction with that administrative placement gives him no actionable claim against the Board.

Conclusion
Finding no issue of material fact and no wrongful dismissal of plaintiff from his employment with the Board, the summary judgment granted by the trial court is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] Even assuming that Shiers could be considered as a certified teacher in August 1999 (an issue we need not address), he does not present evidence or argument that his placement in the position at RJHS was outside of the areas of teaching to which his certification extended.