694 So.2d 596 (1997)
Deloris WILSON, Plaintiff-Appellee,
v.
OUACHITA PARISH SCHOOL BOARD, Defendant-Appellant.
No. 29463-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
Snellings, Breard, Sartor, Inabnett & Trascher by Jon K. Guice, Monroe, for defendant-appellant.
Noah, Smith & Newman by Elmer G. Noah, II, Monroe, for plaintiff-appellee.
*597 Before HIGHTOWER, BROWN and PEATROSS, JJ.
BROWN, Judge.
Appellee, Deloris Wilson, is the school librarian at West Monroe High School. Near the end of the 1995-96 school year, Ms. Wilson was instructed by the school principal, Ernest Reed, to remove four books from the library shelves. Ms. Wilson objected, but complied with the principal's request. Nonetheless, Ms. Wilson was verbally reprimanded by the principal.
Ms. Wilson instituted a formal grievance with the principal in accordance with the Ouachita Parish School Board's grievance policy. Ms. Wilson's grievance was based upon the principal's actions in ordering her to remove the books from the library and in issuing her a verbal reprimand.
The school board's grievance policy provides for four levels. The first level is an informal discussion with the employee's principal or immediate supervisor. Level two is a written grievance filed with the employee's principal or immediate supervisor. Level three is a written appeal to the school superintendent. The fourth and final level is a full hearing to be conducted by the superintendent.
The last day of school of the 1995-96 school year was May 21, 1996. On May 24, 1996, three days into summer vacation, Ms. Wilson received a letter from Superintendent Lanny Johnson denying her grievance. At this point, Ms. Wilson had completed the third step in the grievance process. On June 4, 1996, Ms. Wilson faxed Supt. Johnson a written request to proceed to the fourth and final step in the grievance procedure.
By letter dated June 17, 1996, Ms. Wilson's request for a hearing was denied as untimely. It was the school board's position that Ms. Wilson's request was not timely because it was not received within five school days of her receipt of Supt. Johnson's letter. In fact, under the Board's interpretation, it was one day late if the Memorial Day holiday was not counted.
On July 16, 1996, Ms. Wilson filed a petition for mandamus, seeking an order from the court directing the school board to comply with the grievance procedure set forth in La. R.S. 17:100.4. After an evidentiary hearing, the court granted Ms. Wilson's request for mandamus and ordered the school board to allow her to proceed with her grievance. In its oral reasons, the court found that Ms. Wilson's request for a level four hearing was timely and recognized that her right to such a hearing is mandatory. The school board has appealed.

Discussion
Mandamus is an extraordinary remedy which is used sparingly by the courts to compel something that is clearly provided by law, but only where it is the sole available remedy or where the delay occasioned by the use of any other remedy would cause an injustice. Felix v. St. Paul Fire and Marine Insurance Co., 477 So.2d 676 (La.1985); Clark v. City of Shreveport, 26,638 (La.App. 2d Cir. 05/10/95), 655 So.2d 617.
It is well settled that a writ of mandamus lies to compel performance of prescribed duties that are purely ministerial. Terral Barge Line, Inc. v. Madison Parish Port Commission, 577 So.2d 787 (La.App. 2d Cir. 1991). A ministerial duty is one which is performed without requiring the exercise of judgment, in obedience to some clear command. Id., citing Note, MandamusCompelling an Official to Perform Discretionary Duty, 29 La.L.Rev. 570, 574 (1969).
La. R.S. 17:100.4 provides that each school board shall adopt grievance procedures for teachers and other school employees. Subsection A of La. R.S. 17:100.4 allows individual school boards to enact their own rules, regulations and policies in order to establish a grievance procedure that will guarantee a fair hearing on employee grievances. Subsection C, however, contains three mandatory procedures that each school board is required to include in their specific grievance policy. La. R.S. 17:100.4(C) provides:
(1) The grievant or group of grievants shall present the grievance first to the appropriate immediate supervisor or his designee.

*598 (2) If the grievant or group of grievants is not satisfied with the disposition of the grievance by the immediate supervisor or his designee, the grievance shall be presented to the school system superintendent or his designee.
(3) If the grievant or group of grievants is not satisfied with the disposition of the grievance by the school system superintendent or his designee, the grievant or group of grievants may request in writing a full hearing before the superintendent or his designee on the grievance. Upon receipt of such written request, the superintendent or his designee shall conduct a full hearing on the grievance, maintain a transcript of the proceedings, and make a written recommendation for disposition of the grievance and provide a copy of the transcript to the school board at a meeting of the board. The board then shall dispose of the grievance. (Emphasis added).
Notwithstanding the latitude given to school boards to establish their own grievance policies, the mandatory language of Subsection C assures teachers and school employees an absolute right to a full hearing to be conducted by the superintendent and disposition or resolution of their grievance by the school board. Thus, we find that the statutory duties imposed upon the school board by La. R.S. 17:100.4 are purely ministerial and that the trial court was correct in requiring the school board to comply with the statutory provision. Our analysis, however, does not end here.
As noted above, La. R.S. 17:100.4 allows each individual school board to establish rules, regulations and policies, including deadlines, for its grievance procedure. We emphasize, however, that these provisions must be reasonable and unambiguous.
The school board's policy provides as follows:
If the grievance is not resolved, the grievant may, no later than five school days after receipt of the superintendent's decision, request in writing a full hearing by the superintendent or his designee.
Interpretation of this particular provision is the primary issue before us on appeal.
The school board urges that its policy clearly requires a teacher or employee to request a level four hearing within five school days of receipt of the superintendent's decision on the level three appeal. As Superintendent Johnson testified, the school board considers school days to be those days the school board office is open, i.e. Monday through Friday, exclusive of school holidays. According to Supt. Johnson, these days are considered school days even during the summer months when most teachers and students are out for summer vacation.
Ms. Wilson emphasizes that the school board's grievance policy does not define or otherwise explain the term school days. Furthermore, there is no attachment or memorandum to the policy that provides such a definition. Thus, because it is susceptible to more than one meaning, the term is ambiguous.
The following is excerpted from the trial court's oral reasons for judgment:
[O]ther than the self-serving declarations of Superintendent Johnson, there is no evidence that his interpretation of school days, which I consider a very important term, a term of art, that there is no evidence that that was ever made known to the employees in the context of this grievance procedure in any type of bulletins or memoranda, contracts, or policy procedure manuals. If that was in fact the policy that the administration adhered to, well, then I'm not sure how it's supposed to be made known to the rank and file so that they may all be on the same page in terms of understanding what a school day is. And I think it's critical to understand what your rights are under the grievance procedure that you know what a school day is because the term is used no fewer than five times.
We likewise find ambiguity in the term school days. The only state statutory provision which contains a definition or explanation of school days is La. R.S. 17:154.1(A), which provides that a school day is one consisting of at least 330 minutes of instructional time. We concede that this *599 statute does not pertain to anything other than the number of instructional hours there must be in a day for it to be considered a school day. Nonetheless, this provision illustrates the myriad of reasonable, plausible meanings that the term school days can have.
As did the trial court, we reject the school board's argument that the provisions of its grievance procedure are to be unilaterally interpreted by the board. To hold otherwise would serve only to flout the clear intent of the legislature in enacting La.R.S. 17:100.4. This we will not do.

Conclusion
We therefore affirm the trial court's judgment ordering the school board to allow Ms. Wilson to proceed with her grievance. Costs are assessed to defendant-appellant.
HIGHTOWER, J., dissents with reasons.
HIGHTOWER, Judge, Dissenting.
Plaintiff instituted a formal grievance after receiving an oral reprimand regarding the presence of certain books in the West Monroe High School library. Later, complaining about the Ouachita Parish School Board's interpretation of the words "school days" within its written grievance procedures, words utilized in the board's various promulgated Grievance Procedures for approximately twenty years, Ms. Wilson sought mandamus allowing her to proceed to the next level with her grievance.
After review of the record, I am not convinced that plaintiff properly sought or proved her entitlement to mandamus. That extraordinary remedy is used sparingly by courts to compel something that is clearly provided by law, but only where that is the sole remedy available, or where the delay occasioned by the use of any other remedy would cause an injustice. Plainly, mandamus lies only to compel performance of purely ministerial duties or to correct an arbitrary abuse of discretion. Clark, supra, and authorities therein. It does not issue in doubtful cases. Terral Barge Line, Inc. v. Madison Parish Port Com'n., 577 So.2d 787 (La. App. 2d Cir.1991).
The majority recognizes that the school board, in fulfillment of the "ministerial duty" created by La. R.S. 17:100.4, appropriately established deadlines within its Grievance Procedures. True, such time limitations should be reasonable and unambiguous, and, indeed, an arbitrary abuse of discretion in that regard could properly provoke a mandamus proceeding. Similarly, a plaintiff may seek that remedy where the board has completely refused to follow its own policy. See Easterling v. Monroe City School Board, 612 So.2d 975 (La.App. 2d Cir.1993). Yet, none of these circumstances exist here.
Surely, the five-day period established by the school board cannot be deemed unreasonable in the context of the present matter. And, even if we assume arguendo some degree of ambiguity, such an issue is not readily susceptible to resolution through the extraordinary remedy of mandamus. Cf. Kneipp v. City of Shreveport, 550 So.2d 748 (La.App. 2d Cir.1989), reversing a mandamus order where the trial court failed to give appropriate weight to the mayor's interpretation of a city ordinance not defining the word "playgrounds."
In essence, plaintiff simply challenges the school board's interpretation of its grievance policy or procedures. Her evidence, however, fails to show any likely injustice from the delays in obtaining, through ordinary proceedings, an interpretation and declaration of her rights. Thus, I respectfully decline to join in an extension of judicial authority to grant mandamus under these circumstances.