938 So.2d 1212 (2006)
Louvenia GRAY, Plaintiff-Appellee
v.
CADDO PARISH SCHOOL BOARD, Defendant-Appellant.
No. 41,324-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2006.
*1213 Abrams & Lafargue by Reginald W. Abrams, Shreveport, for Appellant.
Weems, Schimpf, Gilsoul, Haines, Landry & Carmouche, by Brian D. Landry, Kenneth P. Haines, Shreveport, for Appellee.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
The Caddo Parish School Board appeals from a trial court judgment making a writ of mandamus peremptory and ordering the school board to transfer or reassign its employee, Louvenia Gray, from her current school to a similar position within the school system. We vacate the trial court judgment and remand the matter with instructions.

FACTS
Ms. Gray was a daytime custodian at Barrett Elementary School. She had been employed by the Caddo Parish school system for 18 years at five different schools. On December 13, 2004, the principal at Barrett, Dr. Joanne Hood, searched a bag which had been placed in Ms. Gray's car trunk. Dr. Hood had previously received information from people in the neighborhood that janitorial workers had been seen putting bags in their vehicles. Dr. Hood became suspicious when she saw Ms. Gray taking a bag to her car shortly after arriving and not during a break time. When Ms. Gray initially refused to open the trunk, the principal made a statement which Ms. Gray interpreted as a threat of dismissal. The bag contained a gift of soft drinks and a sympathy card given to Ms. Gray by a coworker; Ms. Gray's brother had recently died.
Thereafter, Ms. Gray filed a grievance pursuant to the Caddo Parish School Board policy. The grievance procedure has five stages: informal (discussion between employee and supervisor), Level I (submission of employee's written complaint to immediate supervisor), Level II (submission to the appropriate human resources director), Level III (submission to human resources assistant superintendent) and Level IV (submission to the school board).
In the instant case, the informal and Level I stages with the principal involved in the incident were resolved against Ms. Gray. At Level II, although the director of classified personnel did not believe that her complaint rose to the level of a grievance, he attempted to obtain a transfer to another school for her. However, a transfer to another daytime custodial position was not possible, and Ms. Gray declined to accept a nighttime position.
As the results at the informal, Level I and Level II stages were unsatisfactory to Ms. Gray, she sought consideration at Level III. A Level III grievance hearing was held on March 24, 2005. (Although transcribed, large portions of the testimony were apparently inaudible and are consequently missing from the transcript.) The assistant superintendent who reviewed the matter recommended that Ms. Gray be reassigned or transferred to another school site by the classified personnel department and that the principal be advised *1214 of less intimidating means of conducting searches of private property when deemed necessary. Attempts to place Ms. Gray in another position were unsuccessful for a number of reasons, including her refusal to interview for evening positions. When the disposition reached at Level III was not implemented, Ms. Gray sought to move her grievance forward to Level IV.
On October 4, 2005, the school board refused to hear her grievance at Level IV on the basis that it did not meet the policy's definition of a "grievance."
On October 17, 2005, Ms. Gray filed a petition for a writ of mandamus to compel the school board to implement the disposition reached at Level III. Alternatively, she requested that the court order the school board to comply with La. R.S. 17:100.4 and hear her grievance.
On October 26, 2005, the school board filed an exception of unauthorized use of summary proceedings, contending that the plaintiff's request to be placed at a different school involved discretion.[1] Because discretion was involved, the school board asserted that it could not be described as a truly ministerial duty and that mandamus was not available. The school board also maintained that it exercised its discretion at Level IV and disposed of her grievance by dismissing it as presented.
In November 2005, the school board filed an answer to the plaintiff's petition for a writ of mandamus. It also filed an exception of no cause of action, claiming that the plaintiff was asking the court to intervene in the day-to-day operations of the school system which were under the direction of the school superintendent. It also argued that the school board enacted its policy pursuant to law and that the plaintiff had not alleged that the policy was not followed.
The matter was tried on November 28, 2005. The trial court denied the school board's exceptions. The parties stipulated to many of the facts, and the plaintiff rested after submission of the stipulations. The school board then presented the testimony of David Barr, the director of classified personnel for the Caddo school system who handled the plaintiff's grievance at Level II, and Dr. Mary Nash Robinson, the assistant superintendent of the human resources division who handled the matter at Level III. Ollie Tyler, the Caddo superintendent of schools, also testified. The school board called the plaintiff to testify. In rebuttal, the plaintiff called Jackie Landsdale, the president of the Caddo Federation of Teachers Support Personnel.
The trial judge ruled in favor of the plaintiff. He found that the matter was a grievance and that it was treated as such. He concluded that the Level III resolution should be implemented. The judgment on the writ of mandamus, which was signed on December 16, 2005, made the writ peremptory. It directed that the school board transfer or reassign the plaintiff to a similar position within the Caddo Parish school system which afforded her substantially the same working conditions, in accordance with the Level III disposition. Costs were assessed against the school board. On the same day, the trial court signed a judgment denying the school board's exceptions.
The school board appeals.

*1215 GRIEVANCE
The school board claims that the trial court erred in finding that the employee's complaint met the definition of a "grievance" in the school board policy.
The current school board policy defines a "grievance" as meaning "a claim by an employee of the violation, misinterpretation or inequitable application of any of the board policies, rules or regulations under which such employee works."[2] However, the definition also provides that the term shall not apply "in any manner in which (1) a method of review is not prescribed by law, or (2) the board is without authority to act."
Mr. Barr, Dr. Robinson and Superintendent Tyler all testified that they determined that Ms. Gray's complaint did not rise to the level of a "violation, misinterpretation or inequitable application of any of the board policies, rules or regulations." Nonetheless, they all treated it as such and endeavored to assist her by transferring her to a different school.
La. R.S. 17:100.4 provides that each school board shall adopt grievance procedures for teachers and other school employees. Subsection A of La. R.S. 17:100.4 allows individual school boards to enact their own rules, regulations and policies in order to establish a grievance procedure that will guarantee a fair hearing on employee grievances. Subsection C, however, contains three mandatory procedures that each school board is required to include in their specific grievance policy. It states:
C. Effective not later than January 1, 1996, and thereafter, the rules, regulations, and policies required by Subsection A of this Section shall include but not be limited to the following guidelines and procedures:
(1) The grievant or group of grievants shall present the grievance first to the appropriate immediate supervisor or his designee.
(2) If the grievant or group of grievants is not satisfied with the disposition of the grievance by the immediate supervisor or his designee, the grievance shall be presented to the school system superintendent or his designee.
(3) If the grievant or group of grievants is not satisfied with the disposition of the grievance by the school system superintendent or his designee, the grievant or group of grievants may request in writing a full hearing before the superintendent or his designee on the grievance. Upon receipt of such written request, the superintendent or his designee shall conduct a full hearing on the grievance, maintain a transcript of the proceedings, and make a written recommendation for disposition of the grievance and provide a copy of the transcript to the school board at a meeting of the board. The board then shall dispose of the grievance.
We agree with the trial court that Ms. Gray's complaint that she was subjected to an unconstitutional search of her vehicle was, in fact, a grievance. Consequently, when Ms. Gray was dissatisfied with the implementation of the Level III recommendation, the school board erred in dismissing the appeal as presented because the matter did not meet the definition of a "grievance."
In her petition, Ms. Gray alternatively requested that the court order the school board to comply with La. R.S. 17:100.4 and hear her grievance. We find that such a *1216 disposition would be the most appropriate under the facts of this case and will allow the parties to come to a just resolution of this matter. The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. See also Wilson v. Ouachita Parish School Board, 29,463 (La. App. 2d Cir.5/7/97), 694 So.2d 596, writ denied, 97-1543 (La.9/26/97), 701 So.2d 990. Accordingly, we vacate the trial court judgment and direct that the school board hear Ms. Gray's grievance.
In view of this disposition, we pretermit consideration of the other issues raised in the instant appeal as unnecessary.

CONCLUSION
The judgment of the trial court is vacated, and the matter is remanded for further proceedings in compliance with this opinion. We direct that the Caddo Parish School Board hear the grievance raised by Louvenia Gray in compliance with La. R.S. 17:100.4, within 60 days of the date of finality of this judgment.
Costs of this appeal are assessed to the appellant.
JUDGMENT VACATED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] When filling a school position, the central office apparently submits a list of recommended persons to the supervisor under whom the employee will be working. Then the supervisor selects someone from the list and "recommends" that person back to the central office. In turn, the central office usually hires that individual unless he or she is found to have a work history problem or a criminal record.
[2] Previously this definition also included the phrase ". . . or that he has been treated unfairly." However, the superintendent testified that this language is no longer in the definition.